IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.T., et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>PITTSBURG UNIFIED SCHOOL DISTRICT, et al.,<br><br>        Defendants.<br>_____/ | No. CV 16-3314 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

    A girl just shy of her tenth birthday brings claims against her former special-education aide, teacher, principal, and school district for abuse she allegedly suffered at their hands or on their watch. So do her parents. The latter three defendants now move to dismiss.

## I.  BACKGROUND

### A.  Factual Background

    Plaintiff K.T. suffers from autism, attention deficit hyperactivity disorder, and an intellectual disability. Compl. (dkt. 1) ¶ 16. Although she understands when spoken to, K.T. has a limited vocabulary and has trouble speaking in complete sentences. Id. ¶ 18. She also often puts inedible objects in her mouth. Id. ¶ 16.

    During the 2014-15 academic year, K.T. attended Parkside Elementary in Pittsburg, California as a special-education student. Id. ¶ 17. Her assigned teacher was Defendant Tara Brinkerhoff. Id. Defendant Gloria Joseph served as a special-education aide in Brinkerhoff's class. Id. K.T. and her parents, Plaintiffs Rachel Torres and David Cope, allege "ongoing verbal and physical abuse" at the hands of one or both women – including being verbally and physically "aggressive," "forcibly grabbing K.T.'s hands," "grabbing K.T.'s hands and jerking them away from her body," "grabbing and pulling K.T.," "holding

K.T. really hard and pulling her," "forcibly turning K.T.'s body around," "pushing K.T.," "slapping K.T.'s face," and kicking K.T.'s buttocks. Id. ¶ 21.

Maria Aldave, a parent of another Parkside student, saw Joseph "and/or" Brinkerhoff commit "similar abuse" multiple times. Id. ¶ 21(d). Caterina Ferrante, a Parkside staff member, saw other staff – including Joseph "and/or" Brinkerhoff – pull up K.T.'s shirt and exhibit "very abrupt and jumpy" behavior towards her on a "daily or near-daily basis." Id. ¶ 22(c). Occupational therapist Cynthia Chaires discovered strange bruises K.T.'s hips, stomach, and underarms. Id. ¶ 21(a). The bruises ranged in size and color, from big to small, red to green. Id. An unnamed bus driver saw Joseph scream at a student and complained to Parkside's principal, Defendant Jeffrey Varner, about what he saw. Id. ¶ 22(a). And Brinkerhoff herself reported problems with how Joseph interacted with students to Varner. Id. ¶ 22(b). She had seen Joseph being rough with students, pulling students, being "physically loud" with students, raising her voice to students, getting "in the kids' faces," and generally being "rough around the edges with them." Id. ¶ 22(c). All of this happened before May 28, 2015. See id. ¶¶ 21-22.

On May 28, Aldave and another parent, Bertha Canales, saw Joseph "and/or" Brinkerhoff grab K.T. roughly by the hands, pull her back and forth, and scream at her. Id. ¶ 21(b). On June 1, those two parents again saw Joseph "and/or" Brinkerhoff grab K.T. roughly, pull on her arms, push her – and then slap her across the face and kick her buttocks. Id. ¶21(c). The parents told Varner what they saw. Id. ¶ 24.

On June 3, yet another parent, Maria Hernandez, saw Joseph "and/or" Brinkerhoff grab K.T.'s hands roughly and pull them away from her mouth "in an aggressive and strong manner." Id. ¶ 21(e). That same day, K.T.'s parents found out about the alleged abuse. Id. ¶ 25. Joseph was placed on administrative leave. Id. ¶ 26. On June 4, a district staff member called the police. Id. ¶ 27. Parkside staff, including Joseph "and/or" Brinkerhoff, said K.T.'s disability justified their behavior.[1] Id. ¶ 23.

---

[1] The complaint does not mention when or to whom they said this.

2

Because of the abuse, K.T. has regressed verbally and behaviorally. Id. ¶ 31. She now fears going to school. Id. K.T. picks at her skin and hits herself in the face hard enough to leave bruises. Id. She turns ten years old on November 14, 2016. Id.

### B.   Procedural History

As required by California law, K.T. and her parents each filed claims with Defendant Pittsburg Unified School District ("the District") on November 12, 2015. See Dist. Claims (dkt. 25-1 Exs. A, B & C); Cal. Gov't Code § 945.4. Those claims named Gloria Joseph and "other unidentified employees" of Pittsburg Unified School District as those "causing the accident or loss." See Dist. Claim at 1. They also listed "Tara Brinkerhoff" as a witness. Id. The allegations there are nearly identical to those here, with one exception: they allege that Joseph alone – not Joseph "and/or" Brinkerhoff – abused K.T. See id. The District denied the claims on December 16, 2015. Compl. ¶ 1.

K.T. and her parents sued Joseph, Brinkerhoff, Varner, and the District on June 15, 2016. See id. at 15. They alleged federal constitutional and statutory claims, as well as claims under California law. See id. at 1. Brinkerhoff, Varner, and the District now move to dismiss all claims against them, except those for negligence. See MTD at 2.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a complaint if it does not plead facts that entitle the plaintiff to relief. See Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 562 (2007).

Under Rule 12(b)(6), the Court must accept all material allegations as true and construe the complaint in the light most favorable to the plaintiff. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478

3

1 U.S. 265, 286 (1986) (citation omitted); see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557). Rather, it must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

A complaint should not be dismissed without leave to amend unless there is strong evidence that an amendment will result in "undue delay, bad faith, . . . repeated failure to cure deficiencies by amendments previously allowed . . . [or] futility of amendment . . . ." Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty., 708 F.3d 1109, 1117 (9th Cir. 2013) (quotation omitted); see also Fed. R. Civ. P. 15. The Court should examine whether the complaint can be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990). Courts should liberally grant leave to amend, but an amended complaint must allege facts consistent with the challenged pleading. Id. at 296-97.

### III. DISCUSSION

K.T. and her parents bring an array of federal and state law claims against Brinkerhoff, Varner, and the District. But before reaching the substance of those claims, the Court will address an issue left mostly unaddressed by the parties: immunity.

#### A. Immunity

Because this case involves a suit for money damages against state officials and a state entity, there are two immunity issues lurking in the shadows.

First, Brinkerhoff and Varner could have invoked qualified immunity at this stage but did not. See MTD at 2-3, 6-15; Reply at 4-16. So, for now, they have waived the defense. See Norwood v. Vance, 591 F.3d 1062, 1076 (9th Cir. 2009); Isom v. Town of Warren, 360 F.3d 7, 9 (1st Cir. 2004) ("[D]efendants did not raise immunity . . . and so they have waived that defense as grounds for the motion."); see also Siegert v. Gilley, 500 U.S. 226, 231

4

1  (1991) ("Qualified immunity is a defense that must be pleaded."). Still, they may invoke
2  qualified immunity at summary judgment so long as it does not cause unfair prejudice. See
3  Norwood, 591 F.3d at 1076.
4      Second, although California school districts are state agencies, Belanger v. Madera
5  Unified School. Dist., 963 F.2d 248, 254 (9th Cir. 1992), the District has not invoked
6  sovereign immunity.[2] See MTD at 2-3, 6-15; Reply at 4-16; ITSI T.V. Prod. v. Agric. Ass'n,
7  3 F.3d 1289, 1291 (9th Cir. 1993) (citing Blatchford v. Native Vill. of Noatak, 501 U.S. 775,
8  785 n.3 (1991)) (noting that sovereign immunity must be affirmatively invoked). That said,
9  sovereign immunity – unlike qualified immunity – "partakes of the nature of jurisdictional
10 bar" and may be raised for the first time, well, anytime. See Edelman v. Jordan, 415 U.S.
11 651, 678 (1974). But even if the District eventually invokes sovereign immunity, it will not
12 do it any good. K.T.'s only federal claims against the District come under the Americans
13 with Disabilities Act (ADA) and the Rehabilitation Act.[3] See Compl. ¶¶ 32-52. The Ninth
14 Circuit has squarely held that Title II of the ADA validly abrogates sovereign immunity. See
15 Miranda B. v. Kitzhaber, 328 F.3d 1181, 1185 (9th Cir. 2003). As for the Rehabilitation Act
16 claims, the District waived sovereign immunity by accepting federal funds. Id. at 1186.

### B.    Section 1983 Claims Under the Fourth Amendment

K.T. asserts two theories of liability under the Fourth Amendment. First, she maintains that Joseph "and/or" Brinkerhoff used excessive force. See Compl. ¶ 33; Opp'n

---

[2] The complaint says that the District "agreed to waive" its sovereign immunity with respect to all state law claims, Compl. ¶ 10, but that waiver appears to be a creature of statute, see Cal. Gov't Code. § 815.2 ("A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee . . . .").

[3] K.T. does not bring a claim under Monell v. Dep't of Soc. Serv., 436 U.S. 658 (1978) against the District. See Compl. ¶¶ 32-52. That makes sense because, again, the District is a state entity not a municipal one. See Belanger, 963 F.2d at 254. This is an important point. The District repeatedly maintains that it may only be held liable under the ADA and Rehabilitation Act for the actions of someone "high enough up the administrative hierarchy." See, e.g., MTD at 14. That argument mistakes the bar for municipal liability under City of St. Louis v. Praprotnik, 485 U.S. 112 (1988) – a species of Monell liability requiring a policymaker to ratify unconstitutional acts of underlings – with the bar for liability under the ADA and Rehabilitation Act: respondeat superior. See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001).

(dkt. 35) at 7-9.  Second, she maintains that Brinkerhoff and Varner knew about the alleged abuse but failed to act, resulting in supervisory liability.  See Compl. ¶ 35.

### 1.     Excessive Force

Contrary to Defendants' suggestions, it is abundantly clear that K.T.'s excessive force claim should be analyzed under the Fourth Amendment, not substantive due process. Compare Preschooler II v. Clark Cnty. School Bd., 479 F.3d 1175, 1180 (9th Cir. 2007); ("The consequences of a teacher's force against a student at school are generally analyzed under . . . the Fourth Amendment."); Doe v. Hawaii Dep't of Ed., 334 F.3d 906, 909 (9th Cir. 2003) ("We hold that Doe's claim is appropriately brought under the Fourth Amendment, not the Due Process Clause."), with MTD at 7 ("It is not clear whether Plaintiff's excessive force claim should be analyzed under the Fourth or Fourteenth Amendment.").  It is equally clear that K.T. has stated a claim for excessive force under the Fourth Amendment.

Like the plaintiff in Preschooler II, K.T. is young, non-verbal, and suffers from autism.  See Preschooler II, 479 F.3d at 1180-81; Compl. ¶¶ 16, 18.  She too alleges that her teacher – among other things – grabbed and slapped her.  See 479 F.3d at 1178; Compl. ¶¶ 21(a)-(d).[4]  And here, as there, "the full extent of the abuse is not known," since neither child could "be counted on to report it."  See 479 F.3d at 1180-81; Compl. ¶¶ 20-22.  So although Defendants suggest that K.T. needs a shoehorn to analogize her case to Preschooler II, at this stage they need a magic wand to distinguish it.

### 2.     Supervisory Liability

K.T. also alleges that Brinkerhoff and Varner failed "to act in response to allegations of serious child abuse" and exhibited "deliberate indifference to the risk of harm to K.T. from

---

[4] To the extent it matters, the allegations in both cases also "allegedly occurred over a period of months."  See Preschooler II, 479 F.3d at 1180; Compl. ¶¶ 21-22.  In any event, a seizure occurs when a state official makes "an intentional acquisition of physical control" over a person.  Brower v. Cnty. of Inyo, 489 U.S. 593, 596 (1989).  So restraining someone's bodily movements by grabbing a hand, squeezing, and then pulling on the arm is a seizure, W. v. Davis, 767 F.3d 1063, 1073 (11th Cir. 2014), which suggests that any particular use of similar force here was a seizure.  K.T. has plausibly alleged that at least some of those instances bore no "reasonable relation to the need," P.B. v. Koch, 96 F.3d 1298, 1304 (9th Cir. 1996), and has therefore stated a claim for excessive force.

6

Joseph and/or Brinkerhoff or Joseph, respectively." Compl. ¶ 35.  This is a claim for supervisory liability.

Although there is no respondeat superior liability under section 1983, supervisors may still be liable for their own misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009) (emphasis added). And even after Iqbal,[5] actionable misconduct includes "action or inaction in the training, supervision, or control" of subordinates, "acquiescence in the constitutional deprivation," or "reckless or callous indifference to the rights of others." Starr v. Baca, 652 F.3d 1202, 1207-08 (9th Cir. 2011) (citation omitted). The question here, then, hinges on whether any of those three things can be said about Brinkerhoff[6] or Varner.

Brinkerhoff had a first-hand view of Joseph's behavior because Joseph worked in her classroom. See Compl. ¶ 17; 21. And at some point, she reported "problems" with her special education aide to Varner – but not to police as required by California's mandatory reporter law. See id. ¶¶ 21; 22(b)-(c); Cal. Penal Code §§ 11165.7 & .9. But even if the constitutional minimum for "acquiescence" falls below state law reporting requirements, K.T. has – at the very least – plausibly alleged that Brinkerhoff failed to "control" Joseph. See Compl. ¶¶ 21; 22(b)-(c). That is enough. See Starr, 652 F.3d at 1208.

Varner presents a closer question, but not by much. Both Brinkerhoff and a bus driver told him about "screaming" and other "problems" with Joseph. See Compl. ¶¶ 22(a)-(b). That is all the complaint alleges until June 1,[7] when Aldave and Canales reported K.T. being slapped, pushed, and kicked. See id. ¶¶ 21(a)-22(c), 28. But even after the report on June 1

---

[5] It is important to remember that the plaintiff in Iqbal sued for invidious discrimination under the Free Exercise Clause of the First Amendment and the Equal Protection Component of the Fifth Amendment. See 556 U.S. at 676. Those intentional tort claims required the plaintiff to "plead and prove that the defendant acted with a discriminatory purpose." Id. But here the defendant's state of mind plays "no role" in deciding the Fourth Amendment claims at issue here. See Whren v. United States, 517 U.S. 806, 813 (1996).

[6] K.T's supervisory claim against Brinkerhoff only makes sense if Joseph committed the abuse – or at least most of it – so for this claim the Court assumes that to be true.

[7] Chaires and Ferrante, for example, apparently reported nothing to Varner or anyone else. See Compl. ¶¶ 21(a), 22(c).

7

– a Monday – Varner did not remove Joseph from class until two days later. See id. ¶¶ 24-27. It is also unclear whether he ever called the police. See id. ¶ 27.

In any event, K.T. has alleged more than enough. As principal of Parkside, Varner may be held liable for failing to control teachers and aides at his school. See Preschooler II, 479 F.3d at 1182-83 (affirming denial of motion to dismiss supervisory claims against school principal, district superintendent, and other administrative personnel). And, if Parkside's training about mandatory reporter laws was as "woefully inadequate " as alleged, Compl. ¶ 30, he bears much of the blame.[8] That qualifies as "inaction in the training" of subordinates. See Starr, 652 F.3d at 1208.

### C.     Section 1983 Claim Under Substantive Due Process

K.T.'s parents bring a substantive due process claim against Joseph, Brinkerhoff, and Varner for "intentionally interfering" with their "liberty to direct the upbringing, education, and care of K.T.," as well as with the parent-child relationship itself. See Compl. ¶ 37. The complaint appears to assert substantive due process claims against Joseph "and/or" Brinkerhoff as alleged perpetrators, as well as against Brinkerhoff and Varner as supervisors.

#### 1.     Perpetrator Liability

Although an alleged victim of excessive force herself may not bring a substantive due process claim, Graham v. Connor, 490 U.S. 386, 395 (1989), the Ninth Circuit allows parents to bring one for a deprivation of "companionship and society" with their child, Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991). But to recover, a parent-plaintiff must demonstrate that the defendant's conduct "shocked the conscience." Porter v. Osborn, 546 F.3d 1131, 1136 (9th Cir. 2008); see also Brittan v. Hansen, 451 F.3d 982, 992, 996 (9th Cir. 2006) (holding that, to state a substantive due process claim, parents must allege (1) a protected liberty interest, (2) a deprivation of that interest, and (3) conduct that shocks the conscience). This is a high bar, which "only the most egregious official conduct" meets. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998); see also, e.g., Breithaupt v. Abram,

---

[8] Because no one at Parkside called the police until June 4, see Compl. ¶ 27, this allegation is plenty plausible.

8

352 U.S. 432, 435 (1957) (holding that conduct shocks the conscience when it so "brutal" and "offensive" as to not "comport with traditional ideas of fair play and decency"). Substantive due process, therefore, is not a "font of tort law to be superimposed upon whatever systems may already be administered by the States." Paul v. Davis, 424 U.S. 693, 701 (1976).

The parties focus on whether K.T.'s parents must allege a "total deprivation" of the parent-child relationship for their substantive due process claim to survive. See MTD at 11-12; Opp'n at 11-13. But that glosses over the dispositive point that the abuse – as plausibly alleged[9] – does not shock the conscience, at least in the constitutional sense. See id.; but see Reply at 13 (referencing the severity of alleged conduct). This is not a case where the defendants shot someone in the head and killed him, see Porter, 546 F.3d at 1135, shot someone in the head and permanently impaired his mental faculties, see Ovando v. City of Los Angeles, 92 F. Supp. 1011, 1015 (C.D. Cal. 2000), or sexually molested a child, see Doe v. Dickenson, 615 F. Supp. 2d 1002, 1004 (D. Ariz. 2009). Grabbing, slapping, and kicking a child with special needs is deplorable. But – without more – it is not so depraved as to be among the "most egregious" of official conduct.

### 2. Supervisory Liability

Because the perpetrator's alleged conduct does not shock the conscience, it follows a fortiori that her supervisor's did not either.

### D. Federal Statutory Claims

K.T. asserts claims against the District under Title II of the ADA and Section 504 of the Rehabilitation Act. See Compl. ¶¶ 39-52. Congress modeled the former on the latter, so the elements for both claims are nearly identical. Under the ADA, K.T. must plausibly allege that she is a "qualified individual with a disability" and that the District denied her benefits or services "by reason of" her disability. See Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); 42 U.S.C. § 12132. Under the Rehabilitation Act, she must do the same,

---

[9] The Court does not credit the conclusory assertion that defendants "intentionally" interfered with the relationship between K.T. and her parents. See Iqbal, 556 U.S. at 680-81.

9

except that the denial must have been "solely by reason" of her disability. See id. Furthermore, to state a claim for money damages under either statute, K.T. must allege that the District intentionally discriminated against her. See Duvall, 260 F.3d at 1138. In the Ninth Circuit, deliberate indifference meets this intent requirement. Id. So if K.T. has plausibly alleged that the District knew that harm to her federally protected rights was "substantially likely" but failed to act, she has stated claims for relief. See id.

      K.T. is clearly a "qualified individual with a disability" under both statutes – and the District does not suggest otherwise, see MTD at 12-15; Reply at 14-16. K.T. also alleges that the abuse came in response to "various symptoms" of her disability, like putting inedible objects in her mouth. See Compl. ¶ 44. Someone even had the gall to tell someone that K.T.'s disability justified the alleged abuse. See Compl. ¶ 23. The defendants seem to reiterate the point here. See MTD at 9. That is enough to satisfy even the Rehabilitation Act's heightened causation standard. See, e.g., E.H. v. Brentwood Union School Dist., 2013 WL 5978008 at *5, (N.D. Cal. Nov. 4, 2013) (holding that allegations of school officials "grabbing" and "dragging" plaintiff in "direct response to manifestations of his disability" met the Rehabilitation Act's causation standard).

      The District counters that no one "high enough up in the chain of command" knew about the alleged abuse and failed to act, and so the District was not deliberately indifferent to K.T.'s rights. MTD at 13-15 (relying on Garedakis v. Brentwood Union School Dist., WL 1718270 at *6, (N.D. Cal. April 29, 2016)). This is, again, beside the point. Duvall makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, a public entity is liable in respondeat superior for the acts of its employees. See 260 F.3d at 1141; see also Sheehan v. City & Cnty. of San Francisco, 743 F.3d 1211, 1232 (9th Cir. 2014) (holding that a city may be held liable under the ADA for acts of beat-level officers). K.T. need only allege that the perpetrator of the alleged abuse was deliberately indifferent to her rights.[10] That bar is clearly met here: both Joseph and

---

[10] The complaint, then, undersells its case by focusing on what Brinkerhoff and Varner knew about the alleged abuse in their role as supervisors. See Compl. ¶¶ 45, 51.

Brinkerhoff knew about K.T.'s disability but at least one of them still went forward with the alleged abuse.

### E.   State Law Claims

K.T. brings a number of claims against Joseph, Brinkerhoff, Varner, and the District under California law.[11]  The latter three have moved to dismiss K.T.'s claims for battery, intentional infliction of emotional distress, and violations of the Bane Act and Unruh Civil Rights Act.  See MTD at 2.  They have not moved to dismiss K.T.'s negligence claims.  See id.  But before reaching the merits, the Court must deal with a threshold issue for some of the claims against Brinkerhoff.

#### 1.   California Tort Claims Act Bar

The California Tort Claims Act requires anyone suing a public entity to first file a claim with the entity that includes a "general description" of the alleged injury "so far as it may be known at the time of presentation of the claim."  See Cal. Gov't Code §§ 910, 945.4.  If a plaintiff does not comply with the statute, California courts will dismiss any claims not already properly brought to the entity's attention.

Still, the statute is designed "to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions."  Stockett v. Ass'n of Cal. Water Agencies, 34 Cal. 4th 441, 446 (2004) (citation omitted) (allowing plaintiff to proceed on wrongful termination claim based on his support for a coworker's complaint of sexual harassment, objections to self-dealing, and protected speech about company bidding practices – even though his initial claim listed only the first basis for wrongful termination).  The statutory bar therefore applies only to a "complete shift in allegations, usually involving an effort to premise civil liability on acts or omissions committed at different times or by different persons."  Id. (quoting Blair v. Superior Court, 218 Cal. App. 3d 221, 226 (1990)).

Although K.T.'s district claim makes nearly identical allegations as her complaint, the former alleged that Joseph alone – rather than Joseph "and/or" Brinkerhoff – committed the

---

[11]   Because some federal claims have survived the motion to dismiss, the Court retains supplemental jurisdiction over the state law claims.  See 28 U.S.C. §§ 1331, 1367.

11

abuse. Compare Dist. Claim at 2-4 with Compl. ¶¶ 21-23, 30. For this reason, Brinkerhoff asserts that K.T.'s state law claims against her (namely battery, intentional infliction of emotional distress, and Bane Act violations) must be dismissed to the extent they rely on her being a perpetrator. See MTD at 5-6. And indeed, plaintiff's counsel should have recognized that an email referencing "Tara" was referring to "Tara Brinkerhoff." See Opp'n at 20; Williams v. Braslow, 179 Cal. App. 3d 762, 772-73 (observing that a plaintiff without reason to know a defendant's identity when filing a Torts Act claim may still sue that person). That being so, Brinkerhoff would have the Court seize on the "different persons" language in Stockett and throw these claims out without a second thought.

The Court refuses the invitation. The district claims named Joseph and "other unidentified employees" as alleged perpetrators. See Dist. Claims at 1. They also told the District what happened, when it happened, and who saw it happen. It is therefore not clear how counsel's oversight deprived the District of the chance to investigate; it had everything else – including all witnesses and school personnel named here – at its fingertips. And, under Stockett,[12] that is what matters.

### 2. Battery

Brinkerhoff gives no reason to dismiss K.T.'s battery claim other than the California Tort Claims Act, see MTD 5-6, so that claim falls away based on the above analysis.

### 3. Bane Act

The Bane Act provides for liability when someone, "by threat, intimidation, or coercion," interferes with "rights secured by the Constitution or laws of the United States" or those of California. See Cal. Civ. Code. § 52.1. Courts deciding whether the "threat, intimidation or coercion" must be distinct from the alleged underlying constitutional or statutory violation have come out all over the map. Compare Cameron v. Craig, 713 F.3d 1012, 1022 (9th Cir. 2013) (holding that the elements for an excessive force claim under the Bane Act are "the same" as under Section 1983), with Shoyoye v. Cnty. of Los Angeles, 203

---

[12] That case, moreover, comes from the California Supreme Court and post-dates Williams, which is a lower court decision.

12

Cal.App.4th 957, 959 (2012) (holding that the Bane Act "requires a showing of coercion independent from the coercion inherent in the wrongful detention itself").

Despite that confusion, the Bane Act claims survive. For a start, K.T. has stated such a claim under Cameron – controlling authority from the Ninth Circuit – simply by having stated a claim for excessive force under Section 1983. See 713 F. 3d at 1022; Part III.B.1. What is more, K.T. has plausibly alleged that physical abuse denied her equal access to education in violation of the ADA, Rehabilitation Act, and the Unruh Civil Rights Act. See Parts I.A, III.D, III.F.5. That is coercion enough. And because California law permits respondeat superior liability for Bane Act violations, Gant v. Los Angeles Cnty., 772 F.3d 608, 623 (9th Cir. 2014); Cal. Gov't Code § 815.2(a), no defendant gets off the hook.

### 4. Intentional Infliction of Emotional Distress

To prevail on her claim for intentional infliction of emotional distress, K.T. must prove, among other things, that the defendants' conduct was "outrageous." See Hughes v. Pair, 46 Cal. 4th 1035, 1050-51 (2009) (citations omitted); CACI Model Civ. Jury Instr. 1600. Conduct is outrageous only if it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Hughes, 46 Cal. 4th at 1051; CACI Model Civ. Jury Instr. 1602. These claims, then, fail for the same reasons as the substantive due process claims. See Stoot v. City of Everett, 582 F.3d 910, 930 (9th Cir. 2009) (equating standard for substantive due process with that for intentional infliction of emotional distress).

### 5. Unruh Civil Rights Act

The District moves to dismiss K.T.'s claim under the Unruh Civil Rights Act because a public school is not a "business establishment" within the meaning of the statute. See MTD at 17-18. The District is mistaken.

The Unruh Civil Rights Act provides that all people in California "are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." See Cal. Civ. Code § 51(b) (emphasis added). The statute's plain language leaves no doubt that courts should read "business establishments" in the "broadest sense possible." Isbister v. Boys Club of Santa Cruz, Inc.,

40 Cal. 3d 72, 78 (1985). And if that were not enough, the Ninth Circuit has held that "[a]ny violation of the ADA necessarily constitutes a violation of the Unruh Act." See Molski v. M.J. Cable, Inc., 481 F.3d 724, 731 (9th Cir. 2007).

The Court will not take the bold step of suggesting that the ADA does not apply to public schools. Accordingly, it holds that public schools are "business establishments" under the Unruh Act, which accords with the weight of lower court authority. See, e.g., Walsh v. Tehachapi Unified School Dist., 827 F. Supp. 2d 1107, 1123 (E.D. Cal. 2011); Y.G. v. Riverside Unified School Dist., 774 F. Supp. 2d 1055, 1065 (C.D. Cal. 2011); Davison v. Santa Barbara Unified School Dist., 48 F. Supp. 2d 1225, 1232-33 (C.D. Cal. 1998); Nicole M. v. Martinez Unified School Dist., 964 F. Supp. 1369, 1388 (N.D. Cal. 1997).

## IV. Conclusion

For the foregoing reasons, the Court:

- DENIES the motion to dismiss K.T.'s Fourth Amendment claims against both Brinkerhoff and Varner.

- GRANTS, with LEAVE TO AMEND, the motion to dismiss Torres's and Cope's substantive due process claims against both Brinkerhoff and Varner.

- DENIES the motion to dismiss K.T.'s ADA and Rehabilitation Act claims against the District.

- DENIES the motion to dismiss K.T.'s battery claim against Brinkerhoff.

- DENIES the motion to dismiss K.T.'s Bane Act claims against both Brinkerhoff and the District.

- GRANTS, with LEAVE TO AMEND, the motion to dismiss K.T.'s intentional infliction of emotional distress claims against Brinkerhoff, Varner, and the District.

- DENIES the motion to dismiss K.T.'s Unruh Civil Rights Act claim against the District.

**IT IS SO ORDERED.**

Dated: November 7, 2016

_____
CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

14